IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC, as Broadcast Licensee of the May 8, 2021 Saul "Canelo" Alvarez v. Billy Joe Saunders Championship Fight Program,<br><br>Plaintiff,<br><br>V.<br><br>BAR SANTE FE LLC, individually and d/b/a Mi Raza Bar & Grill, and GERARDO SANCHEZ, individually and d/b/a Mi Raza Bar & Grill,<br><br>Defendants. | No. 3:23-cv-370-S |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff G&G Closed Circuit Events, LLC, as Broadcast Licensee of the May 8, 2021 Saul "Canelo" Alvarez v. Billy Joe Saunders Championship Fight Program, has filed a Motion for Default Judgment against Defendants Bar Sante Fe LLC, individually and d/b/a Mi Raza Bar & Grill, and Gerardo Sanchez, individually and d/b/a Mi Raza Bar & Grill, *see* Dkt. No. 9, which United States District Judge Karen Gren Scholer has referred to the undersigned United States Magistrate Judge for findings, conclusions, and recommendation, *see* Dkt. No. 12.

For the following reasons, the Court should grant the motion.

## Background

On February 17, 2023, G&G filed suit against Bar Sante Fe LLC and Gerardo

Sanchez, both doing business as Mi Raza Bar & Grill, for violating the Federal Communications Act ("FCA"). *See* Dkt. No. 1.

G&G licenses and markets commercial exhibitions of pay-per-view prizefights. Bar Sante Fe and Sanchez own, operate and do business as Mi Raza Bar & Grill. *See id.*

G&G claims that, under 47 U.S.C. § 553 or 47 U.S.C. § 605, Bar Sante Fe and Sanchez illegally exhibited a pay-per-view fight on May 8, 2021 titled Saul "Canelo" Alvarez v Billy Joe Saunders Championship Fight Program at Mi Raza Bar & Grill without paying G&G the sublicensing fee for commercial establishments. G&G seeks statutory damages, additional damages for willfulness, and attorneys' fees. *See id.*

Bar Sante Fe and Sanchez were served on March 10, 2023. *See* Dkt. Nos. 5, 6.

Despite being properly served, Bar Sante Fe and Sanchez failed to file answers or otherwise appear in the case.

The Clerk of the Court entered defaults against Bar Sante Fe and Sanchez on October 16, 2023. *See* Dkt. No. 8.

G&G then filed this motion for default judgment against Bar Sante Fe and Sanchez. *See* Dkt. No. 9.

**Legal Standards**

Federal Rule of Civil Procedure 55(b)(2) governs applications to the Court for default judgment. *See* Fed. R. Civ. P. 55(b)(2). A plaintiff seeking a default judgment must establish: (1) that the defendant has been served with the summons and complaint and that default was entered for its failure to appear; (2) that the

defendant is neither a minor nor an incompetent person; (3) that the defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) that, if the defendant has appeared in the action, the defendant was provided with notice of the application for default judgment at least three days prior to the hearing. *See Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. 3:12-cv-2092-M, 2013 WL 145502, at *2-*3 (N.D. Tex. Jan. 14, 2013). The plaintiff must also make a *prima facie* showing there is "jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

In the Fifth Circuit, three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment by the district court. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *See id.* The clerk will enter default when default is established by an affidavit or otherwise. *See id.* After the clerk's entry of default, a plaintiff may apply to the district court for a judgment based on such default. *See id.*

The Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments. *See Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the federal rules and resorted to by the courts only in

extreme situations."). But this policy is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers*, 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)); *see also Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

Before entering a default judgment, a court should consider any relevant factors. Those factors may include "(1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion." *Arch*, 2013 WL 145502, at *3 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). The Court should also consider whether the defendant has a meritorious defense to the complaint. *See id.*

An entry of default "does not establish the amount of damages. After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *United States of Am. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (cleaned up); *cf. Jackson v. FIE Corp.*, 302 F.3d 515, 524-31 (5th Cir. 2002) (holding that jurisdictional allegations and findings supporting a default judgment are not entitled to preclusive effect in the

personal-jurisdiction context of Federal Rule of Civil Procedure 60(b)(4)). A court may enter default judgment against a party and determine damages without the benefit of an evidentiary hearing "where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (cleaned up).

## Analysis

I. <u>The Court has subject matter jurisdiction and personal jurisdiction.</u>

G&G has shown the Court has subject matter jurisdiction.

The Court has jurisdiction under 28 U.S.C. § 1331 because this is a "civil action[ ] arising under the ... laws ... of the United States." 28 U.S.C. § 1331. G&G alleges violations of the Federal Communications Act, a federal law. *See* Dkt. No. 1 at 1.

This Court has personal jurisdiction over Bar Sante Fe and Sanchez. "[T]he Texas long-arm statute extends to the limits of federal due process." *Bulkley & Associates, L.L.C. v. Dep't of Indus. Relations, Div. of Occupational Safety & Health of the State of California*, 1 F.4th 346, 351 (5th Cir. 2021). Federal due process requires that "the suit aris[es] out of or relate[s] to the defendant[s'] contacts with" Texas. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

The pay-per-view telecast was intercepted and broadcast at Mi Raza Bar & Grill, which is located at 2401 W. Jefferson Street, Grand Prairie, Texas. This lawsuit arises out of that contact with Texas.

Bar Sante Fe is a Texas limited liability corporation doing business as Mi

Raza Bar and Grill. Bar Santa Fe's business mailing address is 1608 Marie Terrace, Arlington, Texas 76010. On May 8, 2021, Bar Sante Fe held the license/permit issued by the Texas Alcoholic Beverage Commission for the commercial establishment named Mi Raza Bar & Grill located at 2401 W. Jefferson Street, Grand Prairie, Texas 75051; owned and/or operated Mi Raza Bar & Grill; had a right and ability to supervise the activities at Mi Raza Bar & Grill; and had a direct financial interest in the activities of Mi Raza Bar & Grill.

Sanchez is an individual residing in Arlington, Texas and doing business as Mi Raza Bar & Grill. On May 8, 2021, Sanchez held the license/permit issued by TABC for Mi Raza Bar & Grill, was an owner and/or manager of Mi Raza Bar & Grill, was an officer and/or owner of the entity that owned the property where Mi Raza Bar & Grill was located, was an officer and/or owner of the entity that owned Mi Raza Bar & Grill, and had a direct financial interest in the activities of Mi Raza Bar & Grill.

II.  <u>The procedural requirements for default judgment have been met.</u>

G&G has satisfied the prerequisites for entry of default judgment against Bar Santa Fe and Sanchez:

- Bar Santa Fe was served on March 10, 2023. *See* Dkt. No. 5.
- Sanchez was served on March 10, 2023. *See* Dkt. No. 6.
- The Clerk of the Court entered defaults against Bar Sante Fe and Sanchez on October 16, 2023. *See* Dkt. No. 8

- Because Bar Sante Fe is not a natural person, it cannot be a minor or incompetent person or in the military service.
- Sanchez is not minor, incompetent person, or in the military. *See* Dkt. No. 70.

And Rule 55(b)(2) requires that a party have written notice of the application if it has appeared in the case. *See* FED. R. CIV P. 55(b)(2). Because neither Bar Sante Fe nor Sanchez has appeared in the case, notice is not required.

III. <u>G&G's pleadings support default judgment against Bar Sante Fe and Sanchez.</u>

The Court takes as true the facts asserted by a plaintiff against a defaulting defendant. *See Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022). The defendant, by its default, admits the plaintiff's well-pleaded allegations of fact. *See id.*

When determining whether the requested default is "'supported by well-pleaded allegations' and has 'a sufficient basis in the pleadings,'" the Fifth Circuit "draw[s] meaning from the case law on Rule 8, which sets forth the standards governing the sufficiency of a complaint." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 505 F.2d 1200, 1206 (5th Cir. 1975)).

"Rule 8(a)(2) requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. (8)(a)(2)). "The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds on which it rests." *Id.*

Ultimately, "[t]he factual allegations in the complaint need only 'be enough to

raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up)). The pleading must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" but have "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 638 (2009) (quoting *Twombly*, 550 U.S. at 547).

G&G alleges violations of both Sections 605 and 553 of the FCA. *See* Dkt. No. 1 at 5. But "the remedies under [S]ections 605 and 553 are not cumulative." *Garden City Boxing Club, Inc. v. Vinson*, No. 3:03-cv-0700-BD(P), 2003 WL 22077958, at *3 (N.D. Tex. Sept. 3, 2003); *see Entm't by J&J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp. 2d 769, 775 (S.D. Tex. 2002) (noting that § 605 provides for greater recovery than does § 553, and that "[r]ecovery generally is not available under both provisions").

As explained below, G&G succeeds on its Section 605 claim. As a result, the Court need not consider G&G's motion for default judgment as to the Section 553 claim. *See, e.g.*, *Garden City Boxing Club, Inc.*, 2003 WL 22077958, at *3 ("Because plaintiff has prevailed on its claim under section 605(a), it cannot recover under section 553(a). This moots consideration of plaintiff's motion on this ground."); *J&J Sports Prods., Inc. v. Little Napoli, Inc.*, Civil Action No. H-13-1237, 2014 WL 3667903, at *3 (S.D. Tex. July 22, 2014) (similar).

Section 605 of the FCA prohibits persons from "intercept[ing] any radio

communication ... or receiv[ing] or assist[ing] in receiving any interstate or foreign communication by radio and us[ing] such communication ... for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Section 553 of the FCA prohibits persons from "intercept[ing] or receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system" without authorization. 47 U.S.C. § 553(a)(1). "Sections 553 and 605 ultimately implicate similar policy objectives and provide similar standards and remedies." *Prostar v. Massachi*, 239 F.3d 669, 674 (5th Cir. 2001). Nonetheless, "[a] logical reading ... reveals a clear demarcation whereby '§ 605 deals with communications traveling through the air (via radio), and § 553 covers communications traveling over cable wire.'" *J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 352–53 (5th Cir. 2014) (cleaned up; quoting *Charter Commc'ns Entm't I, DST v. Burdulis*, 460 F.3d 168, 173 (1st Cir. 2006)).

"The Communications Act is a strict liability statute." *Joe Hand Promotions, Inc. v. Adame*, No. EP-12-CV-141-KC, 2012 WL 3561367, at *4 (W.D. Tex. Aug. 16, 2012) (cleaned up; collecting cases). A defendant's state of mind is therefore relevant only to the question of damages, not liability. *See id.*; 47 U.S.C. § 553(c)(3)(B) (allowing court to increase the damages award for willful violations); 47 U.S.C. § 605(e)(3)(C)(ii) (same).

G&G pleads facts to state a claim for which relief may be granted for violations of 47 U.S.C. § 605. G&G is in the business of marketing and licensing commercial exhibitions of pay-per-view prizefight events. It possessed the exclusive

-9-

proprietary rights to exhibit and sublicense the closed-circuit telecast of the May 8, 2021 Saul "Canelo" Alvarez v. Billy Joe Saunders Championship Fight Program (the "Event"), including the undercard or preliminary bouts and commentary, at closed circuit locations like theaters, arenas, bars, clubs, lounges, restaurants, and other commercial locations throughout Texas. *See* Dkt. No. 1 at ¶6. In Texas, the closed-circuit broadcast of the Event was available only through an agreement with G&G. *See id.* ¶¶7, 8.

The transmission of the Event originated via satellite and was electronically coded or "scrambled." *See id.* at ¶ 9. For the signal to be received and telecast clearly, it had to be decoded with electronic decoding equipment. *See id.* The establishments that contracted with G&G to broadcast the Event were provided with the electronic decoding capability and/or satellite coordinates necessary to receive the signal of the Event. *See id.* ¶11.

The transmission of the Event was available for Bar Sante Fe and Sanchez to purchase for broadcast in Mi Raza Bar & Grill. Had Bar Sante Fe and Sanchez chosen to purchase the Event, they would have been authorized to receive, transmit, and publish the Event at Mi Raza Bar & Grill. But they did not contract with G&G or any of its agents to obtain the rights to broadcast the Event. *See id.* at ¶10.

On May 8, 2021, Mi Raza Bar & Grill was a commercial establishment and was open to the public. Either by satellite transmission or through unauthorized receipt over a cable system, Bar Sante Fe and Sanchez willfully intercepted or received the interstate communication of the Event or assisted in the receipt of the

-10-

interstate communication of the Event. *See id.* at ¶12. The Event was willfully, knowingly, and purposefully shown and exhibited at Mi Raza Bar & Grill. *See id.* But Bar Sante Fe and Sanchez did not receive permission or authorization from G&G, did not enter into an agreement with G&G to show the Event at Mi Raza Bar & Grill, and did not pay G&G a licensing fee to show the Event at Mi Raza Bar & Grill. *See id.* at ¶¶13-15.

IV.   <u>G&G is entitled to damages, attorneys' fees and costs.</u>

Under Section 605 of the FCA, the aggrieved party has the option of electing to pursue actual or statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i). If it opts for the latter, "the party aggrieved may recover an award of statutory damages for each violation ... involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). Additionally, should the Court find that a defendant violated the statute "willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may increase the damage award by up to $100,000.00, at its discretion. *Id.* § 605(e)(3)(C)(ii). Finally, "an aggrieved party who prevails" receives full costs, including reasonable attorney's fees. *Id.* § 605(e)(3)(B)(iii).

As a general rule, courts may enter a default judgment awarding damages without a hearing only if the amount of damages is a liquidated sum, an amount capable of mathematical calculation, or an amount demonstrated by detailed affidavits. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). It is a matter within the court's

discretion whether to hold a hearing before awarding damages in a default judgment. *See* FED. R. CIV. P. 55(b)(2) (in determining amount of damages entered in default, court may conduct such hearings or order such references to determine amount of damages "as it deems necessary and proper"); *James*, 6 F.3d at 310 (district court has wide latitude in deciding whether to require evidentiary hearing before entering default judgment).

Here, G&G has not requested a hearing and has moved only for statutory, not actual, damages. *See* Dkt. No. 1 at 5; Dkt. No. 9. And, so, a hearing is not necessary to calculate damages.

A. <u>Statutory Damages</u>

G&G presents evidence that Bar Sante Fe and Sanchez would have faced a sublicensing fee of $2,000 for Mi Raza Bar & Grill had they actually paid to lawfully broadcast the Event. *See* Dkt. No. 9-1 at 7-8 ¶ 7, 40, 49.

Courts have made clear that simply awarding damages in the amount a defendant would have been charged for a sublicense is insufficient as it would have no deterrent effect. *See Joe Hand Promotions, Inc. v. RLPR Mgmt., LLC*, Civil Action No. 12-cv-2106, 2015 WL 539649, at *5 (W.D. La. Feb. 6, 2015) (noting one purpose of statutory award of damages is to deter conduct and awarding twice license fee in damages); *Joe Hand Promotions, Inc. v. Plummer*, Civil Action No. 3:14-cv-00001, 2014 WL 3749148, at *2 (N.D. Miss. July 29, 2014) (same, awarding three times license fee as damages); *Little Napoli, Inc.*, 2014 WL 3667903, at *3 (awarding one and one-half times license fee as statutory damages); *Al-Waha Enters.*, 219 F. Supp.

2d at 776 ("Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the event does nothing to accomplish [the deterrence of future violations].").

While the undersigned agrees that the award of statutory damages should be greater than the sublicensing fee, it finds G&G's requested damages – $10,000.00 – to be excessive. A reasonable award is around two to three times what would have been the cost to Bar Sante Fe and Sanchez had they followed the law. *See G & G Closed Circuit Events LLC v. Rivals Sports Grill LLC*, Civil Action No. 6:12-3052, 2014 WL 198159, at *4 (W.D. La. Jan. 14, 2014); *J&J Sports Prods., Inc. v. Rodriguez*, Civil Action No. SA-13-CA-342-XR, 2013 WL 3967833, at *2 (W.D. Tex. July 31, 2013); *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008).

The undersigned therefore recommends the Court award G&G $6,000.00 in statutory damages.

    B.    <u>Willful Damages</u>

G&G maintains that, "because of the absence of any way in which Defendants could have 'innocently' accessed the broadcast of the Event, it is apparent that Defendants specifically and willfully acted to illegally intercept the transmissions of the Event for Defendants' commercial advantage." Dkt. No. 9 at 9 ¶22.

Courts have generally found this reasoning persuasive. *See J&J Sports Prods., Inc. v. Torres*, No. 3:14-cv-3964-B, 2015 WL 4643191, at *5 (N.D. Tex. Aug. 5, 2015) (finding willfulness given limited means by which defendants can access

pay-per-view events and unlikelihood that an establishment could intercept such broadcasts by chance); *J&J Sports Prods., Inc. v. Rivera*, No. EP-14-CV-003430KC, 2015 WL 1137473, at *5 (W.D. Tex. Mar. 12, 2015) ("It is highly unlikely that Defendant accidentally intercepted the transmission of the Event, since the transmission was electronically coded."); *Al–Waha Enters.*, 219 F. Supp. 2d at 776-77 (finding willfulness given the "limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance").

Based on that same reasoning, the undersigned concludes that G&G has made a sufficient showing of willfulness.

G&G has also presented evidence that establishes Bar Sante Fe and Sanchez exhibited the Event for either direct or indirect commercial gain. Mi Raza Bar & Grill advertised the Event, *see* Dkt. 9-1 at 73, sold food and beverages, and showed the event in an urban area, *see id.* at 40. *Accord J&J Sports Prods., Inc. v. Garcia*, Civil Action No. H-08-1675, 2009 WL 2567891, at *4 (S.D. Tex. Aug. 14, 2009) (finding commercial motive where event was advertised on marquee outside of establishment); *Joe Hand Promotions, v. 152 Bronx, L.P.*, 11 F. Supp. 3d 747, (S.D. Tex. 2014) (finding commercial motive where food and beverages were sold to customers and when broadcast occurred in relatively urban city where it would have more than a minimal impact).

Having found willfulness and commercial motive, the undersigned turns to the question of the appropriate amount of damages to award. As noted above, the

court has discretion to increase the award of damages up to $100,000. *See* 47 U.S.C. § 605(e)(3)(C)(ii).

Here, G&G has provided the affidavit of a hired auditor who observed the Event being shown on twelve televisions. *See* Dkt. No. 9-1 at 40. The auditor did not pay a cover charge. The auditor performed three headcounts, finding three patrons each time. *See id*. The affidavit does not state how many of these patrons ordered food and drinks. *See id*. The auditor also noted there was one bar employee. *See id*. The affidavit includes several photos of Mi Raza Bar & Grill. *See id*. at 43-47. A fight can be observed on a television screen in one photo. *See id*. at 46.

Plaintiff suggests an award of $50,000.00 in additional damages – quintuple its suggested statutory damages of $10,000.00 – is justified to meaningfully penalize Bar Sante Fe and Sanchez's willful violation of the FCA.

The undersigned disagrees. A quadrupling or quintupling of damages is generally reserved for circumstances involving unauthorized showings to a larger number of patrons or on more than a single television, or both. *See, e.g.*, *Joe Hand Promotions, Inc. v. Alima*, No. 3:13-cv-0889-B, 2014 WL 1632158, at *5 (N.D. Tex. Apr. 22, 2014) (awarding four times the statutory base award as additional damages where defendant charged cover and showed event on nine screens to approximately 85 to 125 patrons); *J&J Sports Prods., Inc. v. Q Café, Inc.*, No. 3:10-cv-2006-L, 2012 WL 215282, at *5 (N.D. Tex. Jan. 25, 2012) (awarding five times statutory base award where defendant broadcast event in urban area and court noted the importance of deterring future violations); *Kingvision Pay–Per–View, Ltd. v. Scott E's*

-15-

*Pub, Inc.*, 146 F. Supp. 2d 955, 961 (E.D. Wis. 2001) (awarding five times base statutory amount because defendant advertised event, charged cover, and showed event on five television monitors).

Instead, based on the evidence currently before the Court and the need to deter future violations, additional damages equal to three times the base statutory damages is reasonable.

The Court should grant Plaintiff's request for additional damages and award Plaintiff the sum of $6,000.00.

C. <u>Attorneys' Fees and Costs</u>

Under the FCA, the court is required to order the recovery of full costs, including attorneys' fees, to an aggrieved party who prevails. *See* 47 U.S.C. § 605(e)(3)(B)(iii).

G&G here requests an award of a one-third contingent fee – $4,000 in this case. *See J&J Sports Prods. v. Casita Guanajuato, Inc.*, No. A-13-CA-824-SS, 2014 WL 1092177, at *3 (W.D. Tex. March 19, 2014) (holding that one-third contingency fee was reasonable in anti-piracy case and noting that it is "frequently the measure of attorney's fees used in Communications Act cases by federal courts in Texas").

The undersigned finds that such an award would be excessive and unreasonable as it is disproportionate to the brief time that G&G's counsel spent working on this case. *See J&J Sports Prods., Inc. v. Restaurant & Tacqueria Cristina*, No. 3:11-cv-3104-N (BF), 2013 WL 3878589, at * (N.D. Tex. July 29, 2013).

Alternatively, G&G requests a total fee of $2,400, representing eight hours of

attorney work on the case at a $300 hourly rate.

The request for attorneys' fees is supported by the affidavit of G&G's attorney, David M. Diaz. *See* Dkt. No. 9-1 at 51-72. Although the affidavit is not supported by time records or evidence setting forth the number of hours expended, Diaz states that a minimum of eight hours has been spent by counsel on this case through the preparation of the motion for default judgment.

The undersigned finds that G&G's counsel reasonably expended a minimum of eight hours to prosecute this case successfully. The record reflects that David M. Diaz has a great deal of experience with anti-piracy cases as well as other areas of civil litigation.

The undersigned also finds that a $300 hourly rate is reasonable and within the range of the usual and customary rate charged by attorneys in the Dallas legal community with similar ability, competence, experience, and skill as G&G's attorney.

The Court should award G&G $2,400 in reasonable attorneys' fees.

V.   <u>Consideration of other factors supports default judgment.</u>

Although default judgment is a harsh remedy, Bar Sante Fe and Sanchez's failure to answer G&G's complaint supports default judgment on G&G's claims. *See* Dkt. No. 1.

There has not been substantial prejudice against Bar Sante Fe or Sanchez, as they were properly served and aware of the complaint. *See* Dkt. Nos. 5, 6. And there are clearly established grounds for default because Bar Sante Fe and Sanchez failed

to answer G&G's complaint.

There is no indication that Bar Sante Fe and Sanchez's defaults were caused by good faith mistake or excusable neglect. And, so, the Court would not feel obligated to set aside the default on Bar Sante Fe or Sanchez's motion. *See Lindsey*, 161 F.3d at 893.

## Recommendation

The Court should grant Plaintiff's Motion for Default Judgment [Dkt. No. 9] and award G&G Closed Circuit Events, LLC $6,000 in statutory damages, $6,000 in additional damages, and $2,400 in attorneys' fees – for a total award of $14,400.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. ' 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.

*See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 6, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE